United States District Court
Southern District of Texas
**ENTERED**
October 21, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| COKINOS ENERGY, L.L.C, § <br> § <br> *Plaintiff,* § <br> v. § <br> § <br> HERBERT J. SIMS & CO. INC., § <br> § <br> *Defendant.* § <br> § | CIVIL ACTION NO. 4:23-cv-2432 |

## ORDER

Pending before the Court is Defendant Herbert J. Sims & Co., Inc's ("Defendant" or "H.J. Sims") Motion for Partial Summary Judgment. (Doc. No. 12). Plaintiff Cokinos Energy, L.L.C ("Plaintiff" or "Cokinos") filed a response in opposition. (Doc. No. 14). Defendant replied. (Doc. No. 16). After considering the applicable law, motion, response, reply, and summary judgment evidence, the Court hereby DENIES Defendant's Motion. (Doc. No. 12).

### I. Background

This is a dispute involving the trade of futures contracts.[1] (Doc. No. 1-3 at 2). Defendant is an "introducing broker." (Doc. No. 14 at 2). As an introducing broker, Defendant places trades for its customers in an investment account. (*Id.*). The investment account is held with a "futures commission merchant," otherwise known as a clearing firm. (*Id.*). The future commission merchant in this instance is ADM Investor Services, Inc. ("ADMIS"). (*Id.*).

---

[1] Futures contracts are "agreements to purchase or sell a commodity for delivery or cash settlement in the future at a specified price." *Commodity Futures Trading Comm'n v. EOX Holdings L.L.C.*, No. CV H-19-2901, 2021 WL 4482145, at *1 (S.D. Tex. Sept. 30, 2021). Many times, futures are traded as part of hedging strategy by a company or individual in the industry involving that commodity. Other times, futures are traded just as part of an investment strategy.

1

Cokinos was a customer of Defendant. (Doc. No. 14-1 at 5). When it began working with H.J. Sims as an introducing broker in April of 2016, H.J. Sims had Cokinos sign a Customer Agreement with ADMIS. (Doc. No. 14-1 at 6). Once that relationship was established, Cokinos could instruct H.J. Sims what trade it wanted placed. (*Id.* at 5). H.J. Sims would forward the order on Cokinos's behalf to ADMIS's trade desk. (*Id.*). As part of its contract with ADMIS, Cokinos would deposit money with ADMIS to cover the purchase price plus any commission charges. (*Id.* at 6; Doc. No. 12 at 3). ADMIS would then pay H.J. Sims its portion of the commission once the trade was completed. (*Id.* at 7).

On May 27, 2022, Cokinos informed H.J. Sims that Cokinos needed to close a futures contract spread. (*Id.* at 3). Cokinos requested that H.J. Sims purchase "5k/day" of natural gas futures. (*Id.* at 3; Doc. No. 14-1 at 14). H.J. Sims confirmed, stating "ok." (*Id.*).[2] Yet, when it place the trade, H.J. Sims had ADMIS purchase ten times the amount Cokinos had ordered. (Doc. No. 14 at 4). When Cokinos closed this much larger position, it allegedly experienced a $3.9 million loss. (*Id.*).

Cokinos initiated this lawsuit in Texas state court alleging two causes of action: (1) breach of fiduciary duty and (2) breach of contract. Defendant removed the suit to this Court. Defendant now moves for partial summary judgment, contending that no valid contract exists between the parties and, thus, Plaintiff's breach of contract claim fails as a matter of law. Plaintiff admits it did not have a written contract with Defendant on the day of the trade. (Doc. No. 13-7 at 5). Thus, any contract Plaintiff alleges Defendant breached must be oral or implied. The Court finds that Plaintiff has met its burden to raise sufficient evidence to survive this motion for summary judgment.

---

[2] These communications were made in writing via ICE Chat (an interface specifically for traders and brokers to communicate with each other in real-time), so the order and the agreement to place the order are documented. Despite this documentation, Plaintiff admitted it did not have a written contract with H.J. Sims. (Doc. No. 13-7 at 5).

2

## II.  Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III.  Analysis

A breach of contract claim requires pleading and proof that: (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and

3

(4) the plaintiff sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).[3] To prove the first element (the existence of a valid contract) requires the Plaintiff to establish that (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *See, e.g., E–Learning LLC v. AT & T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.); *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018). Consideration is also a fundamental element of a valid contract. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408–09 (Tex.1997), *superseded by statute on other grounds*. As noted above, Plaintiff conceded there was no written contract between the parties that governs their relationship. (Doc. No. 13-7 at 5). Still, the elements for the formation of a contract, whether written, oral, or implied, are the same. *See Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (the elements of express and implied contracts are identical); *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("The elements of written and oral contracts are the same. . . .").[4]

Defendant contends Plaintiff's breach of contract claim fails because Plaintiff cannot provide any evidence that a valid contract exists. Specifically, Defendant advances three arguments in support of its motion: (1) there is no consideration and no mutual agreement to material terms; (2) any contract must be assessed in the context of the Commodity Exchange Act

---

[3] Defendant's motion attacks the first element: the existence of a valid contract. Primarily, Defendant contests whether there is sufficient evidence of consideration or mutual assent. While there seems to be little question there is evidence to support the remaining elements, it is discussed in a following section.
[4] Since the element of a contract are the same regardless (whether written, oral, or implied), and since Plaintiff has admitted in response to a request for admission that no written contract exists, this Court need not decide whether the ICE Chat exchange surrounding the order constitutes a written contract.

and customer agreement with ADMIS; and (3) the futures trade was governed by the customer agreement only.

### A. Defendant's contention that there is no consideration and no mutual assent

First, Defendant asserts that there is no valid contract between the parties because there is no consideration to support such a contract. Consideration is a bargained for exchange of promises. *Fed. Sign*, 951 S.W.2d at 408. Consideration consists of benefits and detriments to the contracting parties. *Id.* at 409. A contract that lacks consideration, lacks mutuality of obligation and is unenforceable. *Id.*

Plaintiff contends that there is consideration to support an alleged contract, stating that "H.J. Sims agreed to, and did, act as Cokinos's broker for the transaction in dispute, accepting the trade requested by Cokinos and executing it in the commodities futures market." (Doc. No. 14 at 1). Plaintiff further contends that in exchange for Defendant's service to Cokinos, Defendant received a share of the commissions Cokinos paid to ADMIS for the transaction. (*Id.*). Thus, it seems that Plaintiff relies on the payment made by ADMIS to H.J. Sims as consideration for Plaintiff's contract with H.J. Sims. Moreover, Plaintiff argues that because Defendant was acting as its agent at the time it placed the trade, the agency relationship necessarily gives rise to breach of contract. (Doc. No. 14 at 5–6).

Plaintiff asserts that consideration may be paid indirectly to the promisee. The Court agrees. Texas law does not require the consideration to be paid directly to H.J. Sims. *See In re Moody*, 862 F.2d 1194, 1198 (5th Cir. 1989), citing *Hovas v. O'Brien*, 654 S.W.2d 801, 803 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd) ("It is well settled in Texas that consideration may be given either by the promisee or by some other person to either the promissor or some other person."). Here, there is evidence supporting the contentions that: (1) Cokinos told H.J. Sims to

5

place the order; and (2) H.J. Sims then agreed to place the trade, and, indeed, did place the order (albeit allegedly incorrectly). Both parties expected the consideration for those actions would be paid by Plaintiff to ADMIS, who would in turn compensate H.J. Sims. Defendant does not dispute that consideration may be paid indirectly. Defendant does allege, however, that the same consideration cannot support multiple contracts. Thus, Defendant claims the commission provided to H.J. Sims by ADMIS cannot support the contract between Cokinos and H.J. Sims because it already supports the contract between H.J. Sims and ADMIS. The Court disagrees. H.J. Sims was paid by ADMIS as a direct consequence of the futures contracts placed by Cokinos with it. Indeed, there is evidence that Cokinos paid commissions to ADMIS, a portion of which were subsequently paid to H.J. Sims. (Doc. No. 14-1 at 23). It is of no importance that Cokinos cannot provide the exact formula ADMIS uses to calculate H.J. Sims's commission. At the time the contract would have formed, Cokinos and H.J. Sims were aware, and agreed, that H.J. Sims would be compensated by ADMIS for its work. This is sufficient consideration to support a contract.

Moreover, Plaintiff provides some evidence that Cokinos agreed to contract with ADMIS only because it was recruited by H.J. Sims, and it wanted to use H.J. Sims as its introducing broker. (Doc. No. 14 at 3; Doc. No. 14-1 a 6). Therefore, in order to use H.J. Sims's services, Cokinos was required to do something that benefited H.J. Sims (i.e. enter into a separate contract that provided for the payment of commissions from ADMIS to H.J. Sims). Plaintiff does not definitively make the argument that the contract with ADMIS alone arguably constitutes consideration for its contract with H.J. Sims. Nevertheless, the Court certainly finds that the overall arrangement, in addition to contemplated financial compensation, to be probative of a contract between Cokinos and H.J. Sims. Thus, the Court finds that Plaintiff provided enough evidence to raise an issue of material fact as to whether there is evidence of consideration.

Second, Defendant claims that there is no valid contract because there was no mutual agreement to material terms. The Plaintiff obviously disagrees. A contract need only be definite and certain as to those terms that are "material and essential" to the parties' agreement. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). The material terms of a contract are determined on a case-by-case basis. *Id.*

Both Defendant and Plaintiff focus on whether there was a meeting of the minds regarding the amount of commission paid to H.J. The Court does not find that the amount of the commission paid to H.J. Sims to be controlling. Instead, a reasonable jury could find that the parties had a meeting of the minds as to the services H.J. Sims offered to Cokinos and how H.J. Sims would ultimately be compensated. A jury could also find that, in exchange, Cokinos agreed to place orders through an account with ADMIS so that it could use H.J. Sims as its introducing broker, and that H.J. Sims would be paid based upon each of Cokinos's transaction.

Defendant also asserts that Plaintiff failed to produce evidence on all elements of contract formation, which establishes a failure to meet its burden in response to H.J. Sims's motion for summary judgment. (Doc. No. 16 at 3). While it is necessary that Plaintiff have evidence to support all the necessary elements, it is not necessary that Cokinos lay out evidence of every minute detail of the agreement as long as there is sufficient evidence to raise an issue of material fact as to each element.

The Court finds Plaintiff has met its burden to provide enough evidence to raise an issue of material fact as to each element of contract formation. As discussed below, there is evidence that an offer was made and accepted. Second, there is evidence that the mutuality asserted to the general terms as to how the contractual relationship would work. Finally, there is evidence that each party assented to the terms with the intent that it would be mutual and binding.

H.J. Sims's Vice President of Energy Commodities, Andrew Gilmore, testified that he first established a relationship with Cokinos at a conference in 2012. (Doc. No. 14-1 at 6). Gilmore admitted that he was trying to solicity Cokinos's business. (*Id.* at 5–6). Four years after the conference, Cokinos came to H.J. Sims with an offer to engage as Cokinos's introducing broker. (*Id.*). H.J. Sims agreed, but would only act as Cokinos's introducing broker if Cokinos opened an account with ADMIS as its futures commission merchant. (*Id.*). Cokinos agreed and followed those instructions. (*Id.*). Despite the fact that Defendant vigorously contests that the parties had a meeting of the minds as to the essential terms of the contract, Gilmore testified that placing trades requested by its customers, such as Cokinos, was exactly "the service we provide as an introducing broker." (Doc. No. 14-1 at 5). Additionally, the working relationship that existed between H.J. Sims and Cokinos lasted over six years and Cokinos has placed trades through H.J. Sims prior to the trade at issue, suggesting that the parties agreed to all material terms of the service contract as the two continued working together. (Doc. No. 14 at 6; Doc. No. 13-9 at 6). While Defendant now asserts that there is no contract and, thus, the parties could not have mutually intended that the agreement be mutual and binding, there is evidence that the parties surely intended to work together under the terms discussed. Moreover, there is written evidence that Cokinos communicated the order in question and H.J. Sims agreed to place it but failed to properly do so. (Doc. No. 14-1 at 14). Thus, Plaintiff has provided sufficient evidence that a valid, enforceable contract exists between the parties.

As to the actual cause of action, as noted above, there is evidence a contract exists. There is also evidence that Plaintiff performed. Moreover, there is certainly evidence Defendant did not perform and Plaintiff was damaged by Defendant's non-performance. Therefore, the Court finds

8

that Plaintiff provided enough evidence to raise an issue of material fact as to each element of its claim of breach of contract.

### B. Defendant's contention that an agreement, if any, between the parties must be assessed under the CEA

H.J. Sims contends that "Plaintiff's assertion that it contracted with J.J. Sims as an introducing broker must be assessed within the context of the regulatory framework . . . ." (Doc. No. 12 at 8). Defendant alleges that, "[i]n the context of the regulatory framework applicable to ADMIS and H.J. Sims and Plaintiff's contract with ADMIS, there is no reason there should be a separate contract between Plaintiff and H.J. Sims." (Doc. No. 12 at 2). To bolster this contention, Defendant relies on the Commodity Exchange Act promulgated by the Commodity Futures Trading Commission. (Doc. No. 12 at 8–10); 17 C.F.R. § 1–27f.

The Court does not believe that Defendant's argument that "there is no reason there should be a separate contract between" Plaintiff and Defendant precludes the existence of one. Defendant has certainly not cited any authority that provides a contract cannot be formed between the parties because of the applicable regulatory framework. In fact, the Court has not found any statutory authority or case law providing as much. Instead, the overwhelming majority of case law in this area focuses on whether an introducing broker can invoke the arbitration clause in the contract between customer and clearing firm. Notably, not one of those cases states that an introducing broker and its customer cannot have a contract between them.

### C. Defendant's contention that the trade was governed only by the ADMIS customer agreement

Lastly, Defendant alleges that Plaintiff provides "no terms in the purported unwritten contract with H.J. Sims that are not already covered by its Customer Agreement with ADMIS." (Doc. No. 12 at 11). Plaintiff did, however, provide testimony from Andrew Gilmore. (Doc. No. 14-1 at 3–11). In his deposition, Gilmore testified that at H.J. Sims he places contracts for

9

customers for their hedging programs, matches up trade tickets (which "he writes for every single contract trade"), and conducts "ad hoc miscellaneous research for customers when it comes up," regarding market movements and the like. (Doc. No. 14-1 at 6). Thus, he provides, or is supposed to provide, services for his customers that ADMIS does not.

It is clear that Cokinos was H.J. Sims's customer and the contract at issue is a services contract. (*Id.* at 5). By offering evidence of the terms of the services that H.J. Sims provides to its customers, Cokinos has indeed provided terms that are not already covered by its Customer Agreement with ADMIS. Therefore, Plaintiff has met its burden to bring forth enough evidence to survive summary judgment.

## IV. Conclusion

The Court finds that Plaintiff raised an issue of material fact as to each element of its breach of contract claim. For the reasons above, the Court hereby **DENIES** Defendant's Motion for Partial Summary Judgment. (Doc. No. 12).

SIGNED at this 21st day of October, 2024.

Andrew S. Hanen
United States District Judge